UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-62598-CIV-SINGHAL

**IRAHETA MORALES, Rafael Antonio**,

    Petitioner,

        v.

**KRISTI NOEM**, Secretary of the United States Department of Homeland Security, in her official capacity; **U.S. Department of Homeland Security**; **TODD LYONS**, Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement, in his official capacity; **U.S. Immigration and Customs Enforcement**; **Daren K. Margolin**, Director of the Executive Office for Immigration Review, in his official capacity; **Executive Office for Immigration Review**; **GARRETT RIPA**, Field Office Director for ICE's Enforcement and Removal Operations Field Office in Miami, Florida, in his official capacity; **Warden**, Broward Transitional Center, Broward County, Florida, in their official capacity; **PAMELA BONDI**, U.S. Attorney General,

    Respondents.
_____/

## **ORDER**

**THIS CAUSE** is before the Court on Petitioner Rafael Antonio Iraheta Morales' ("**Petitioner**") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "**Petition**"). (DE [1]). At issue is the custody of an individual who lacks legal status but has been in America for more than twenty years. Having carefully considered Respondents' Return in Opposition to the Petition for Writ of Habeas Corpus (DE [4]), Petitioner's Reply in Support of Petition for Writ of Habeas Corpus (DE [6]), argument of

counsel at the hearing held on January 15, 2026 (DE [8]), and otherwise being fully advised, the Petition is hereby **DENIED**.

## I.   BACKGROUND

Petitioner is an El Salvadorian citizen who entered the United States without inspection on or around November 15, 2004. (DE [1] at 7). Since entering, Petitioner has not obtained legal status but has cultivated substantial ties to the United States. Indeed, Petitioner and his United States citizen wife co-run a small business, from which Petitioner draws a salary. (DE [1] at 39, 53–56). Moreover, Petitioner and his wife have two children who are both United States citizens. (DE [1] at 53–56). And while Petitioner has not been inspected by immigration authorities and lacks legal status, immigration authorities have been aware of his presence in the United States since at least August 2023, when a relative filed an I-130 Petition for Alien Relative on Petitioner's behalf. (DE [1] at 44). The parties do not dispute that, aside from minor traffic infractions, *see* (DE [1] at 58–78), Petitioner has no criminal convictions, *see* (DE [1] at 8).

Nevertheless, the government seeks to remove Petitioner from the United States. On September 5, 2025, the government initiated removal proceedings under section 240 of the Immigration and Nationality Act[1] and issued Petitioner a Notice to Appear ("**NTA**"), asserting he is "an alien present in the United States who has not been admitted or paroled." (DE [1] at 25). That same day, the government took Petitioner into custody and issued a Notice of Custody Determination ("**NCD**"). (DE [1] at 28). The NCD expressly advised Petitioner that he was detained "Pursuant to . . . [8 U.S.C. § 1226] . . . pending a final administrative determination" in his removal proceeding. (DE [1] at 28).

---

[1] 8 U.S.C. § 1229a.

Subsequently, Petitioner moved for bond pursuant to Section 1226(a)(2). (DE [1] at 31–34). After a hearing, the immigration judge denied Petitioner's motion in a short order explaining that, because Petitioner "entered the U.S. . . . without inspection," *Matter of Yajure Hurtado*[2] required the bond motion's denial for lack of "jurisdiction."[3] (DE [1] at 80–81). In *Hurtado*, the Board of Immigration Appeals held that non-admitted aliens are subject to section 1225, not section 1226, such that immigration judges lack authority to hear bond requests from non-admitted aliens. *See In re Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Petitioner remains in custody.

Now, Petitioner seeks habeas relief in this Court, arguing that the immigration judge incorrectly determined that Petitioner is ineligible for bond.[4] *See* (DE [1]). Petitioner argues three bases for relief. **First**, Petitioner argues that he is not an "applicant for admission" governed by section 1225, but instead an alien governed by section 1226 and entitled to a bond hearing thereunder. *See* (DE [1] at 2–3, 9–17). **Second**, he asserts the United States District Court for the Central District of California's final judgment in *Maldonado Bautista v. Santacruz*, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025), binds this Court, requiring it grant the Petition. *See* (DE [1] at 19–21). **Third**, Petitioner argues that his detention violates due process because it has "no defined endpoint" and the government has not determined he is either a flight risk or a community threat. *See* (DE

---

[2] 29 I&N Dec 216 (BIA 2025).
[3] At bottom, "[j]urisdiction is power to declare the law," *Va. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778 (2000) (quoting *Ex parte McCardle*, 74 U.S. 506 (1868)), without which a tribunal is "powerless to proceed to an adjudication," *id.* (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). Although not necessary to adjudicate the present Petition, the Court notes that the immigration judge had authority to declare the law concerning, and to adjudicate, Petitioner's motion for bond under section 1226(c)(2). In fact, it did so by entertaining the motion and determining that Petitioner did not qualify for bond under section 1226 because he was instead governed by section 1225. *See* (DE [1] at 8, 80–81). To the extent *Hurtado* framed immigration judges' lack of statutory **authority** to grant section 1226(c)(2) bond to aliens governed by section 1225 as a **jurisdictional** bar, the court there appears to have misspoke. *See Hurtado*, 291 I. & N. at 12 n.8
[4] Petitioner also seeks a writ ordering his immediate release from custody. He, however, cites no authority for the proposition that he is entitled to immediate release and provided no authority for said proposition during the January 15, 2026, hearing. Accordingly, the Court does not further address this argument.

3

[1] at 17–18). The government counters that the immigration judge properly denied Petitioner bond because Petitioner's removal is governed by section 1225—not section 1226—whereunder bond may not be granted. *See generally* (DE [4]).

## II. **LEGAL STANDARD**

District courts have authority to grant writs of habeas corpus. 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

## III. **DISCUSSION**

The Court considers Petitioner's arguments in turn, *see* Part III-B, but not without first confirming its jurisdiction to review the immigration judge's order, *see* Part III-A.

### A. **Jurisdiction.**

"[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). Although the parties do not raise the issue, the Court is cognizant of section 1226(e)'s limitation on judicial review. That provision provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or **denial of bond** or parole." 8 U.S.C. § 1226 (emphasis added).

As it must, this Court's analysis begins with section 1226's text and, if the text is unambiguous, ends there. *See, e.g.*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The inquiry begins with the statutory text, and ends there as the text is unambiguous."); *see also Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 127 (2018) ("Because the plain language of [the statute] is 'unambiguous,' 'our inquiry begins with the statutory text, and ends there as well.'"). Section 1226(e) contains two prohibitions, one limiting review of the Attorney General's "discretionary judgment" and another limiting review of "'decision[s]' that the Attorney General has made regarding [the alien's] detention or release." *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). Constitutional challenges to "statutory framework[s] that permit[] . . . detention without bail" fall outside these prohibitions. *Demore*, 538 U.S. at 517.

Petitioner does not ask this Court to review the Attorney General's discretionary judgment, as the immigration judge denied Petitioner's motion for want of statutory authority. *See* (DE [1] at 80–81). If anything, he asks this Court to "set aside [an] action or decision by the Attorney General . . . regarding . . . denial of bond" in contravention of section 1226(e)'s second sentence. *See* § 1226(e). But the scope of that limitation is the subject of precedent-evading disagreement at the Supreme Court that boils down to whether section 1226(e) precludes all review—including via habeas—or permits limited challenges to section 1226's "statutory framework." *Compare Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018) (opinion as to Part II) *with id.* at 323 n.6 (Thomas, J., concurring); *compare Nielson v. Preap*, 586 U.S. 392, 401 (2019) (opinion as to Part II) *with id.* at 424 (Thomas, J., concurring). Moreover, the Eleventh Circuit maintains no binding precedent on this issue. Notwithstanding the irresolution, this Court finds direction in *I.N.S. v. St.*

5

*Cyr*, 533 U.S. 289 (2001), and concludes it maintains jurisdiction to adjudicate the Petition.

In *St. Cyr*, the Court considered whether several of section 1252's jurisdiction stripping provisions deprived district courts of habeas jurisdiction to review the Attorney General's decisions in certain immigration proceedings. *See id.* at 298. In so doing, the Court emphasized the "historically distinct meanings" associated with "judicial review" and "habeas review," particularly "[i]n the immigration context." *Id.* at 311 (citing *Heikkila v. Barber*, 345 U.S. 229 (1953)). Furthermore, the Court underscored "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction," noting also that "[i]mplications from statutory text or legislative history are not sufficient to repeal" same. *Id.* at 299. "[I]nstead," the Court explained, "Congress must articulate specific and unambiguous statutory directives to effect [such] a repeal." *Id.* at 299.

The Court further stressed the "obligat[ion] to construe . . . statute[s] to avoid" "serious constitutional problems . . . where an alternative interpretation . . . is 'fairly possible.'" *Id.* at 299–300 (citing *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). But if section 1252's limitations on "judicial review" and "jurisdiction to review" were construed as limiting courts' "historically distinct" authority to entertain habeas petitions, then "substantial constitutional questions" would arise under the Suspension Clause. *Id.* at 300, 311 (citing U.S. Const. art. I, § 9, cl. 2). Accordingly, given the absence of a reviewing forum and "lack of a clear, unambiguous, and **express** statement of congressional intent to preclude judicial consideration on habeas" for important questions of immigration law, the Court interpreted the statute as not stripping habeas jurisdiction. *Id.* at 314 (emphasis added).

6

So too here. If section 1226(e) were construed as prohibiting *all* judicial review—including habeas review—of bond denials, then alien detainees would maintain no mechanism to review the Attorney General's legal errors. Since such a scheme would raise serious constitutional concerns under the Suspension Clause and section 1226(e) does not expressly eliminate habeas jurisdiction, the statute does not divest this Court of habeas jurisdiction. *See Demore*, 538 U.S. at 516–17 (citing *St. Cyr* as supporting habeas jurisdiction to review a broader constitutional challenge to section 1226); *see also Creggy v. U.S. Atty. Gen.*, 208 Fed. App'x 705, 708 (11th Cir. 2006) (recognizing *St. Cyr*'s discussion concerning habeas review and its abrogating effect on *Richardson v. Reno*, 180 F.3d 1311 (11th Cir. 1999), *adopting Richardson v. Reno*, 162 F.3d 1338 (11th Cir. 1998) (holding section 1226(e) bars habeas review)).

### B. Merits.

Having confirmed jurisdiction, the Court considers Petitioner's arguments that **(1)** he is not an applicant for admission governed by section 1225, but instead an alien governed by section 1226; **(2)** the Central District of California's decision in *Maldonado Bautista* binds this Court; and **(3)** due process prohibits Petitioner's detention. As is explained below, the Court rejects these arguments.

#### 1. Construction of 8 U.S.C. Sections 1225 and 1226.

The Petition primarily hinges on contested interpretations of sections 1225 and 1226. Petitioner urges that interpretative principles and context reveal that section 1225 does not apply to "long-present individuals arrested away from the border" because those aliens are instead governed by section 1226 and thus entitled to a bond hearing. *See* (DE [1] at 15). For support, Petitioner argues that section 1225's references to aliens "seeking admission" means it does not apply to aliens who—despite being present without

7

admission—do not actively seek formal admission. (DE [1] at 12, 14–15). He likewise urges a narrowed construction of section 1225 because a contrary interpretation, he argues, would render a recent amendment to section 1226 meaningless. *See* (DE [1] at 12). To resolve these issues, the Court conducts an overview and construction of sections 1225 and 1226.

Because section 1226 is the broader of the two statutes, the Court begins its discussion there. *See Jennings*, 586 U.S. at 397 ("[Section] 1226(a) . . . applies to most . . . aliens . . . and it sets out the general rule regarding their arrest and detention pending a decision on removal."). Section 1226, titled "[a]pprehension and detention of aliens," applies broadly to all "alien[s]"—*i.e.*, "any person not a citizen or national of the United States." *See* 8 U.S.C. §§ 1101(1)(3), 1226(a). Subsection (a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." § 1226(a). "[P]ending such decision, the Attorney General . . . may continue to detain the arrested alien" or "release the alien on . . . bond . . . or . . . conditional parole . . . ." § 1226(a)(1)–(2). The Attorney General may revoke bond or parole "at any time." § 1226(b).

Limiting the discretion afforded the Attorney General in subsection (a), subsection (c) mandates detention of certain criminal aliens and aliens suspected of, and related to those having committed, terrorism. *See generally* § 1226(c)(1). And, of particular importance here, clause (c)(1)(E) mandates detention of all aliens who are both **(1)** "charged with," "arrested for," "convicted of," "admits having committed," or "admits committing acts . . . constitute[ing]" certain criminal offenses ***and*** **(2)** inadmissible under section 1182(a)(6)(A) because they are "present in the United States without being admitted ***or*** paroled." *See* § 1226(c)(1)(E) (citing 8 U.S.C. § 1182(a)(6)(A)). Notably,

8

however, section 1182(a)(6)(A) does not apply to VAWA[5] self-petitioners. *See* § 1182(a)(6)(A)(ii).[6] Accordingly, section 1226(c)(1)(E) does not mandate detention of aliens paroled into the country or VAWA self-petitioners, even if present without admission. Finally, "[t]he Attorney General may release an alien described in [section 1226(c)(1)]" if the Attorney General determines release is necessary to protect witnesses and persons cooperating in criminal investigations, among others. *See* § 1226(c)(4).

Section 1225, however, applies only to a specific subset of aliens—"applicants for admission." *See* § 1225(a). Subsection (a)(1) succinctly defines "applicant[s] for admission" as "alien[s] ***present*** in the United States ***who ha[ve] not been admitted*** or ***who arrive[] in the United States*** . . . ." § 1225(a)(1). To be "admitted," an alien must obtain "lawful entry . . . into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). In other words, admission requires formal, legal entry into the United States. Accordingly, a plain reading of section 1225(a)(1) reveals that arriving aliens and those present in the United States without formal admission, regardless of their "subjective intent to [n]ever apply for admission," are "applicant[s] for admission." *See Sandoval v. Acuna*, 2025 WL 3048926, at *5 n.5 (W.D. La. Oct. 31, 2025).

Section 1225(b)(1) and (b)(2) create two broad tracks for processing, and in many cases initiating removal proceedings against, applicants for admission. Notably, "neither . . . says anything whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. Start with subsection (b)(1). Generally, that paragraph requires expedited removal "without further hearing or review" of arriving aliens and non-admitted, non-paroled aliens who are physically present less than two years immediately preceding inspection ***if*** the alien

---

[5] The Violence Against Women Act, *see* 34 U.S.C. § 12491, *et seq.*
[6] Section 1182(a)(6)(A)(ii) makes exceptions for "certain battered women and children."

willfully misrepresented material facts during inspection or lacks requisite documentation. *See* § 1225(b)(1)(A)(i) (citing § 1182(a)(6)(C), (a)(7)); *see also Jennings*, 583 U.S. at 287 ("Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation."). These applicants for admission may avoid removal only via asylum. *See* § 1225(b)(1)(A)(i)–(ii).

"Section 1225(b)(2)," however, "is broader." *Jennings*, 583 U.S. at 287. That subsection "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* With exceptions not relevant here, paragraph (b)(2) mandates detention of applicants for admission and initiation of removal proceedings, providing: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." § 1225(b)(2)(A). And, as is discussed further below, Section 1229a recognizes only two kinds of aliens—"applicant[s] for admission" and aliens "lawfully present in the United States pursuant to a prior admission." *See* § 1229a(c)(2).

Notwithstanding section 1225's seeming clarity, Petitioner asks this Court to hold that he—despite being present without admission—is not an applicant for admission and therefore not subject to section 1225. In so asking, Petitioner points to section 1225's context and the redundancy that would allegedly result if section 1225 were construed to apply to all aliens who are present without admission despite their length of stay.

Petitioner's primary contextual argument is that section 1225 is preoccupied with ***arriving*** aliens and those who formally apply for admission, not long-present aliens who do not seek formal admission. *See* (DE [1] at 12, 14–15). For support, Petitioner highlights section 1225's reference to aliens "seeking admission," arguing that the phrase so limits

10

section 1225's scope. *See* (DE [1] at 10, 12). But the phrase "seeking admission," if anything, only serves to broaden section 1225's scope. *See Garibay-Robledo v. Noem*, 2026 WL 81679, at *5 (N.D. Tex. Jan 9, 2026).

As an initial matter, section 1225's references to "applicants for admission" and those "seeking admission" appear to refer to the same group of aliens. *See id.* For example, section 1225(a)(5) requires that "[a]n applicant for admission may be required to state under oath any information . . . regarding the purposes and intentions of the applicant *in seeking admission* to the United States . . . ." § 1225(a)(5) (emphasis added). That provision assumes the applicant is seeking admission and in no way indicates that those "seeking admission" are materially different than applicants for admission. So too in section 1225(b)(2)(A). *See* § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . . ."). That the two phrases appear to refer to the same group of aliens is unsurprising, as "[i]t is unclear how an alien can apply for admission without seeking it." *Garibay-Robledo*, 2026 WL 81679, at *5.

But even if the two phrases refer to different groups of aliens, section 1225's reference to those "seeking admission" can only **broaden**—not narrow—the statute's scope. *See id.* This is because subsection (a)(3) reveals that "applicant[s] for admission" are a **subset** of aliens "seeking admission." § 1225(a)(3) ("All aliens . . . who are applicants for admission **or otherwise seeking admission** . . . shall be inspected by immigration officers."); *see also Garibay-Robledo*, 2026 WL 81679, at *5. As a subset, not only do all "applicants for admission" necessarily "seek[] admission," but also the statute's application to those seeking admission can only increase its scope beyond

11

applicants for admission. To hold otherwise would be not only illogical but also require this Court to read words of limitation into section 1225(a)'s definition of "applicant for admission," which it cannot do. *See, e.g.*, *Van Buren v. United States*, 593 U.S. 374, 387 (2021) ("When 'a statute includes an explicit definition' of a term, 'we must follow that definition, even if it varies from a term's ordinary meaning.'" (quoting *Tanzin v. Tanvir*, 592 U.S. 43, 490 (2020))). Accordingly, that section 1225(b)(2) refers to aliens "seeking admission" provides no basis to narrow the plain definition of "applicant for admission."

Next, Petitioner argues that an interpretation applying section 1225 to all aliens present without admission would render section 1226(c)(1)(E) redundant, such that section 1225's application must be narrowed to give section 1226(c)(1)(E) full effect. *See* (DE [1] at 12). Not so. As an initial matter, "[t]he canon against surplusage is not an absolute rule." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 385 (2013) (citing *Arlington Cen. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 299 n.1 (2006)). Indeed,

> redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication. The Court has often recognized: "Sometimes the better overall reading of the statute contains some redundancy."

*Barton v. Barr*, 590 U.S. 222, 239 (2020) (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)). Accordingly, even if this Court discerned redundancy in sections 1225 and 1226, said redundancy "is not a license to rewrite or eviscerate . . . the statute contrary to its text." *Id.* at 239.

But the statutes are not redundant. The difference between sections 1225(b)(2) and 1226(c)(1)(E) is not so much in their respective scopes, but in their roles, placement, and purpose in the Immigration and Nationality Act's larger scheme. Under section 1225(b)(2), the government is required to detain and initiate removal proceedings against

12

all applicants for admission who fail to prove their admissibility "clearly and beyond a doubt" *during "examin[ation]*."  § 1225(b)(2). Thus, examination triggers detention under section 1225(b)(2), but—critically—nothing in section 1225(b)(2) requires the government to seek out and examine applicants for admission wherever they may be.

Section 1226(c) operates differently. First, section 1226(d) requires the Attorney General to "devise and implement a system" to identify and maintain records concerning criminal aliens. *See generally* § 1226(d). Then, section 1226(c) *requires* the Attorney General to—with a warrant issued pursuant to section 1226(a)—"effectively and expeditiously take custody of" and detain any alien covered in subsection (c)(1) pending a decision whether to remove the alien. Together, subsections (c) and (d) require the Attorney General to not only prioritize and keep record of, but also actively seek out and detain, particular aliens in preparation for removal. This enforcement apparatus is markedly different than that of section 1225.

Second, while all aliens subject to section 1226(c)(1)(E) are applicants for admission, the converse is not true. For example, unlike section 1225, section 1226(c) excepts VAWA self-petitioners and parolees, and also permits release of detained aliens in certain circumstances, as discussed above. *See* § 1226(c)(1)(E) (citing 8 U.S.C. § 1182(a)(6)(A)). Moreover, Congress did not deem an alien's criminal record or lack of admission—standing alone—as sufficient to bring him within section 1226's mandatory detention apparatus. The commission of certain crimes *and* lack of admission, however, warranted such treatment—or so thought Congress. Thus, while sections 1225 and 1226(c)(1)(E) overlap in their application to certain aliens present without admission, their overlapping provisions serve different ends and are not redundant. *See Jennings*, 583 U.S. at 305 (holding that, despite "overlap" between section 1226(c) and the PATRIOT

13

Act, the statutes apply to "different categories of aliens in different ways," such that "[t]here is . . . no reason to depart from the plain meaning of § 1226(c) in order to avoid making the provision superfluous"). This Court thus rejects Petitioner's redundancy argument.

Finally, Petitioner's interpretation of section 1225 creates an interpretive conundrum around which this Court cannot reason. Petitioner insists that he is not an applicant for admission and therefore must travel under section 1226, but does not maintain he is not removable or subject to removal proceedings under section 1229a. In fact, Petitioner is currently in section 1229a removal proceedings. *See* (DE [1-2] at 2) (Notice to Appear informing Petitioner he is "[i]n removal proceedings under [section 1229a]"). And as noted above, section 1229a recognizes only two kinds of aliens— "applicants for admission" and those "lawfully present in the United States pursuant to a prior admission." *See* § 1229a(c)(2). It provides:

> In the [removal] proceeding the alien has the burden of establishing—
>
> **(A) *if the alien is an applicant for admission***, that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182 of this title; ***or***
>
> **(B)** by clear and convincing evidence, that the alien is ***lawfully present in the United States pursuant to a prior admission.***

§ 1229a(c)(2).

Petitioner admits he entered without inspection and admission and therefore cannot possibly bear the burden imposed by clause (B). *See* (DE [1] at 7). Instead, the only way Petitioner can avoid removal is if, as "an applicant for admission," he demonstrates he is entitled to be admitted and is not otherwise inadmissible under section 1182. *See* § 1229a(c)(2)(B). This confirms Petitioner's current status as an "applicant for admission." Otherwise, the Court would have to conclude that Petitioner is simultaneously ***not*** an applicant for admission as it concerns his detention, but ***is*** an applicant for

14

admission for purposes of his removal proceedings. Neither the statutory text nor reason can bear this interpretation, and this Court therefore rejects it. Consequently, an "applicant for admission" is any "alien present in the United States who has not been admitted" regardless of the amount of time physically present on U.S. soil. *See* § 1225(a)(1). This Court recognizes Petitioner has cited a series of cases from this District where each other judge who has so far ruled has found sections 1225 and 1226 to be ambiguous. But those cases, while thoughtful, are not consistent with this Court's reading of the plain meaning and common-sense use of words in the provisions at issue.

While satisfied that the foregoing textual analysis yields an accurate interpretation of the relevant statutes, this Court is further assured of the correctness of its analysis to the extent it rejects an interpretation that would "create a perverse incentive to enter . . . [the United States] unlawful[ly]." *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see also United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024); *Garibay-Robledo*, 2026 WL 81679, at *6. Indeed, if aliens who evaded immigration authorities for some unspecified length of time ceased to be "applicants for admission" subject to section 1225's mandatory detention and removal scheme—but were instead subject to discretionary removal with the possibility of bond or parole under section 1226—then aliens would be incentivized to surreptitiously and unlawfully enter the country to obtain more robust rights than their counterparts who lawfully presented themselves for inspection. *See Sandoval*, 2025 WL 3048926, at *6 n.7. "This was the precise situation that Congress intended to do away with by enacting the Illegal Immigration Reform and Immigrant Responsibility Act," and section 1225's text plainly effectuates that intent. *Gambino-Ruiz*, 91 F.4th at 990; *see also Garibay-Robledo*, 2026 WL 81679, at *6 ("By defining 'applicant for admission' to include all aliens who have not

15

been admitted, Congress thus eliminated the previous incentives to enter the country illegally."); *Sandoval*, 2025 WL 3048926, at *6 n.7 (noting that a contrary interpretation "would in effect repeal [Congress's] statutory fix." (quoting *Gambino-Ruiz*, 91 F.4th at 990)).

Because Petitioner is present without admission, he is an "applicant for admission" governed by section 1225. Thus, this Court is constrained to reject his argument that he categorically falls outside of section 1225's scope and the government must travel under section 1226.[7]

### 2. This Court is Not Bound by the Central District of California's Decision in *Maldonado Bautista*.

Petitioner also submits that "Respondents are parties to *Maldonado Bautista*[ *v. Santacruz*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025),] and are bound by the court's declaratory judgment, which carries force and effect of a final judgment as to this issue." (DE [1] at 20) (citing 28 U.S.C. § 2201(a)). While Petitioner cites section 2201(a) for the accurate proposition that a declaratory judgment "shall have the force and effect of a final judgment," he fails to explain why (or how) a district court judgment binds **this** Court "as to this issue." *See* (DE [1] at 20). Indeed, absent the application of *res judicata* or collateral estoppel, a district court is not bound by another district's judgment. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting district courts do not bind one another). Although Petitioner does not expressly invoke *res judicata* or collateral estoppel, this Court quickly explains why their implicit invocation fails.

---

[7] The parties did not address whether the government—having expressly detained Petitioner pursuant to section 1226—could lawfully adjust course and travel under section 1225 to Petitioner's detriment, nor does this Court do so *sua sponte*.

16

>    a. *Different Parties Bar* Res Judicata*'s Application.*

To invoke *res judicata* in the Eleventh Circuit, a litigant must demonstrate that "(1) the prior decision . . . [was] rendered by a court of competent jurisdiction; (2) . . . a final judgment on the merits [was entered]; (3) both cases . . . involve the same parties or their privies; and (4) both cases . . . involve the same causes of action." *S. River Watershed All., Inc. v. Dekalb County, Ga.*, 69 F.4th 809, 815 n.1 (11th Cir. 2023) (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001)). But here, the parties are not the same on either side of the "v." because Petitioner was not joined as a petitioner-plaintiff, nor was the Warden of the Broward Transitional Center included as a respondent, in *Maldonado Bautista*. Consequently, *res judicata* does not apply.

>    b. *Offensive Collateral Estoppel is Not Available Against the Government.*

"Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *In re Narcisi*, 691 Fed. Appx 606, 609 (11th Cir. 2017) (quoting *In re St. Laurent*, 991 F.2d 672, 675–76 (11th Cir. 1993)). But offensive collateral estoppel is not available against the government. *See Demaree v. Fulton Cnty. Sch. Dist.*, 515 Fed. Appx 859, 863 (11th Cir. 2013) (citing *United States v. Mendoza*, 464 U.S. 154, 162 (1984)); *see also Calderon Lopez v. Lyons*, 2025 WL 3683918, at *12–13 (N.D. Tex. Dec. 19, 2025) (explaining that if *Maldonado Bautista* or other judgments bound district courts across the country, then the "the Government must win everywhere" lest it be enjoined nationwide following "just one [adverse judgment]" (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 855 (2025))). Accordingly, collateral estoppel does not apply.

### 3. Petitioner's Detention Does Not Violate Due Process.

Lastly, Petitioner half-heartedly argues that his detention violates due process because it "has no defined endpoint" and the government has not found that he poses a flight risk or danger to the community. *See* (DE [1] at 9, 17–18). But this Court must reject those arguments as foreclosed by the cases Petitioner invokes. Indeed, while Petitioner quotes *Demore* for the proposition that "'the Fifth Amendment' guarantees noncitizens the right 'to due process of law in deportation proceedings,'" (DE [1] at 9 (quoting *Demore*, 538 U.S. at 523)), *Demore*'s **very next** sentence explains that, "[a]t the same time, however, [the] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process," *Demore*, 538 U.S. at 523. Petitioner's detention is part of the deportation process and therefore does not—absent some further showing—amount to a deprivation of due process. Petitioner fails to make such a showing.

Beginning with Petitioner's argument that his detention violates due process because it has no "defined endpoint," the Supreme Court has roundly rejected same. *See Demore*, 538 U.S. at 528–29 (holding mandatory detention under section 1226(c) was not "indefinite" and did not violate due process because removal proceedings have an "obvious termination point" and ordinarily terminate in several months). Moreover, Petitioner's five-month detention is, at least thus far, **shorter** than the six months found permissible in *Demore*. *Id.* at 530–31; (DE [1] at 25).

Concerning his second due process argument, Petitioner cites *Zadvydas* and *Demore* for the proposition that "the Supreme Court has recognized only two permissible purposes for civil detention: mitigating the risk of danger to the community and preventing flight." *See* (DE [1] at 9 (citing *Zadvydas*, 533 U.S. at 990, and *Demore*, 538 U.S. at 528)).

18

While the Court recognized those two bases as legitimate goals of detention, it did not limit the government's legitimate detention objectives to combatting those evils. *See Zadvydas*, 533 U.S. at 990 (explaining that the government proffered reducing flight risk and community danger as the bases for detention); *Demore*, 538 U.S. at 528 (noting detention prevents flight). Moreover, as the *Demore* Court held, the government need not conduct individualized bond hearings to determine individualized flight risk; instead, it may constitutionally mandate detention of aliens in removal proceedings to combat flight. *See Demore*, 538 U.S. at 528 (upholding section 1226(c)'s mandatory-detention-without-bond scheme against challenge that alien detainees had a due process right to individualized bond hearings to determine flight risk). Consequently, Petitioner fails to identify a due process violation. Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that the Petition is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 29th day of January 2026.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF